CANAL NATIONAL BANK, EXEC. UNDER WILL OF
MARION P. HARMON
*vs.*
MURIEL B. CHAPMAN, ET AL.

Cumberland.   Opinion, June 12, 1961

*Robert F. Preti,* for plaintiff.

*Herbert A. Crommett*
*Arthur A. Peabody,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J.   On report.   This is an action by the Canal National Bank of Portland, executor under the will of Marion P. Harmon, for construction of a "pour over" provision in the will.   The issue is whether the property under paragraph Sixth of the will passes into an inter vivos trust as amended subsequent to the execution of the will, or passes into an inter vivos trust as it existed when the will was executed, or passes by intestacy.

The facts are not in dispute.   The testatrix, who is also the settlor of the trust, executed her will on September 24, 1948, and died on January 31, 1960.   Paragraph Sixth of the will reads:

> *"SIXTH:*   I hereby give, bequeath and devise all and any other rights and credits, cash on hand, monies in banks or on deposit, any notes, obligations and securities of any and all kinds to THE CANAL NATIONAL BANK OF PORTLAND as well as any shares in any loan and building associations, the same to be added to and made a part of the Trust Fund created by me under a Trust Agreement with said Bank dated August 24, 1934, as well as any Supplemental Agreement or amendments thereof, in which Agreement provisions are made for additions to said fund."

The trust agreement of August 24, 1934 between the settlor and the plaintiff bank as trustee was a revocable and amendable inter vivos or living trust.   At the time of the execution of the will the trust had been amended in 1942 and again on the day of the execution of the will in 1948.

On September 23, 1955, the trust was again amended with changes in the ultimate disposition of the trust property after the death of the settlor. The amendment was signed and sealed by the settlor and the trustee before one witness. In short, the amendment was not made with the formalities required for the execution of a will under the Statute of Wills (e.g. "subscribed in his presence by 3 credible attesting witnesses"—R. S., c. 169, § 1).

It is unquestioned that the property held in the trust has been of substantial value since its inception in 1934, and likewise that property of substantial value passes under paragraph Sixth of the will. Indeed, in argument, without objection, it was indicated that at the death of the testatrix the trust amounted roughly to $120,000 and the estate to $93,000.

> "The cardinal rule to be applied in the construction of a will is that the intention of the testator when clearly expressed in the will must be given effect, provided it be consistent with legal rules."
>
> \* \* \* \* \* \*
>
> "The intention of the testator is that which existed at the time of the execution of the will."
>
> *First Portland Nat'l Bank* v. *Kaler-Vaill, et al.,* 155 Me. 50, 57, 58, 151 A. (2nd) 708.

The testatrix beyond doubt intended under paragraph Sixth to add property to the trust as it existed at her death. We can think of no sound reason why the testatrix would have intended in 1948 that property should be added to the trust as it then existed, and not to the trust as it might later be amended. One trust and only one trust was intended, and this was the trust created by her in 1934 and continuing after her decease.

The doctrine of incorporation by reference is not applicable under the circumstances. First: The 1955 amendment to the trust was not in existence in 1948 when the will was executed. By definition, therefore, it could not have been

incorporated by reference in the will. *First Portland Nat'l Bank* v. *Kaler-Vaill, et al., supra; Sleeper* v. *Littlefield,* 129 Me. 194, 151 A. 150. Second: The testatrix intended, as we have discussed above, to add property not to the trust existing by virtue of the 1934 agreement as amended when the will was executed, but to the trust existing on her death in 1960. Lastly, the testatrix intended to create not a testamentary trust, but to add property to an existing continuing non-testamentary trust, revocable and amendable in her lifetime.

Our decision is reached through the operation of the doctrine of the fact of independent significance. Here we have in the inter vivos trust as amended after the execution of the will such a fact. The 1934 trust as amended in 1955 is itself of unquestioned validity. The case arises as we have seen not with reference to the validity of the trust, but with reference to the validity of the provision of the will for "pouring over" assets from the estate to the trust.

The trust from 1934 until the death of the testatrix at no time was a mere shell without the body of a trust. The trust with substantial assets has had since 1934 and continues to have an active independent life of its own. We are not concerned here, for example, with a trust with nominal or no assets in the settlor's lifetime which in substance is created by will. There is not the slightest suggestion that the trust will wither away unless nourished by the gift under paragraph Sixth. On the separate entity of the inter vivos trust see *Swetland* v. *Swetland,* 102 N. J. Eq. 294, 140 A. 279; *In re York's Estate,* 95 N. H. 435, 65 A. (2nd) 282; *Re Locke* (or Matter of Rausch) 258 N. Y. 327, 179 N. E. 755, 80 A.L.R. 98, which, however, do not involve amendments after the will.

There are situations not uncommon in the settlement of estates which bear a strong analogy to the case before us. In *Lear* v. *Manser,* 114 Me. 342, 96 A. 240, we held valid

a gift in trust "to such person or persons, or to such institution as shall care for me in my last sickness." The identification of the beneficiary was considered sufficiently certain and capable of proof.

The "receptacle cases" so-called, are also in point. In *Merrill* v. *Winchester,* 120 Me. 203, at 216, 113 A. 261, the following provision was sustained:

> " 'To said Clossen C. Hanson I give in trust for himself and wife and children as may suit the needs and wishes of each, the libraries in my house in rooms below and above and all books, magazines, papers, etc. and all articles of personal property in said house not herein otherwise disposed of; and also all personal property of every kind in my stable and buildings, not heretofore mentioned.' "

In *Gaff* v. *Cornwallis,* 219 Mass. 226, 106 N. E. 860, the court upheld the gift of the contents of a drawer. The opportunity, for example, of adding or removing books from libraries or contents from a drawer after the execution of a will is obvious.

In each of the cases noted there is a fact of independent significance, that is to say, a fact of significance apart from its effect upon the disposition of property under the will. The "pour over," the future identification, the "receptacle" are alike in this respect.

The "pour over" problem has not been decided specifically by our court. *Bragdon, Trustee* v. *Worthley, et al.,* 155 Me. 284, 153 A. (2nd) 627, involved only the distribution of the burden of taxation between an estate and an inter vivos trust. Under the will the testatrix gave the residue to the trustee of the trust. In fact the trust had been amended after the execution of the will and prior to the death of the testatrix. No question, however, of the propriety of the bequest and devise under these circumstances to the trustee

under the trust as amended and existing at the date of death was before the court.

It is urged that in *First Portland Nat'l Bank* v. *Kaler-Vaill, et al., supra,* we disapproved of the doctrine of the fact of independent significance. The court did no more in Kaler-Vaill than deny that the fact of a will by the testator's widow made after the testator's death was a fact of independent significance in construction of his will. Here the *fact* of the amended trust came from *the act* of the settlor-testatrix and trustee.

In *Second Bank-State Street Trust Co.* v. *Pinion* (Mass.) 170 N. E. (2nd) 350, decided in 1960, a "pour over" from an estate to an amendable, revocable inter vivos trust amended after the execution of the will was upheld. The court said, at p. 352:

> "We agree with modern legal thought that a subsequent amendment is effective because of the applicability of the established equitable doctrine that subsequent acts of independent significance do not require attestation under the statute of wills."

The Restatement (2nd) Trusts (1959) adopts a like view:

> "§ 54.  *Creation of Trust by Will*
>
> A trust cannot be created by a will unless the intention to create a trust and the identity of the beneficiaries and of the trust property and the purposes of the trust can be ascertained
>
> (a) from the will itself; or
>
> (b) from an existing instrument properly incorporated in the will by reference; or
>
> (c) from facts which have significance apart from their effect upon the disposition of the property devised or bequeathed by the will."

Comment i, p. 136 reads:

"If in his will the testator manifested an intention that the property bequeathed should be held upon the terms of the trust as they should be at the time of his death, the disposition is valid on the ground of resorting to a fact of independent significance. It cannot be supported on the ground of incorporation by reference, since the instrument which was to govern the testamentary disposition, namely the instrument of modification, was not in existence at the time of the execution of the will. On the other hand, it can be upheld on the ground of resorting to a fact of independent significance, since the inter vivos trust, as it exists at the time of the settlor's death, is such a fact. It is immaterial that the trust was modified after the execution of the will; it is sufficient that it exists independently of the testamentary disposition at the time of the testator's death."

Scott, Trusts (2nd ed.) § 54.3, pp. 375, 377 states:

"Where a settlor creates a trust inter vivos subject to modification, and by a will subsequently executed disposes of property in accordance with the terms of the inter vivos trust as modified from time to time, and thereafter modifies the inter vivos trust, three views are possible as to the testamentary disposition. It may be held that the property passing under the will should be disposed of in accordance with the terms of the inter vivos trust as modified; it may be held that it should be disposed of in accordance with the terms of the trust as they were at the time of the execution of the will; it may be held that the disposition made in the will fails altogether. . .

"It is submitted that the first view, namely that the property is to pass in accordance with the terms of the trust as modified, is the sound one. It is true that this result cannot be supported on the doctrine of incorporation by reference, since the instrument of amendment is not executed until after the execution of the will. It can be upheld,

however, upon the ground that the terms of the disposition by will are determined by facts of independent significance, and the inter vivos trust, as it exists at the testator's death, is such a fact. It is true that the testator is thereby enabled to change the testamentary disposition without executing codicils to his will. This is, however, what he does where he bequeaths the contents of a room or of a safe-deposit box, since he can modify the contents from time to time by removing or adding articles. The same thing is true where he bequeaths property to persons in his employ at the time of his death, since he can change the beneficiaries by hiring and firing. Indeed, there seems to be no greater objection than there is to the whole doctrine which permits a testator originally to make a disposition by reference to a living trust, the terms of which are not stated in the will. The test is not whether the facts are subject to the control of the testator, but whether they are facts which have significance apart from the disposition of the property bequeathed."

We find no solid ground for refusing to give effect to the intention of the testatrix. The trust is adequately identified in the will. The provisions of the trust for amendment were duly carried out. The amendments and indeed the trust as amended are facts of independent significance. The "pour over" under paragraph Sixth from estate to trust as it existed at the death of the testatrix is valid and the executor should make distribution to itself as trustee thereunder.

The entry will be

*Remanded for judgment in accordance with this opinion. Costs and reasonable counsel fees to be determined by the single justice to be paid from the estate.*