Henry AYALA, d/b/a Custom Ambulance Service, Appellant,

v.

CITY OF CORPUS CHRISTI, Appellee.

No. 812.

Court of Civil Appeals of Texas, Corpus Christi.

March 21, 1974.

Pedro P. Garcia, Corpus Christi, for appellant.

James R. Riggs, City Atty., James F. McKibben, Jr., Corpus Christi, for appellee.

OPINION

NYE, Chief Justice.

This is a suit brought by Henry Ayala individually and doing business as Custom Ambulance Service to enjoin the City of Corpus Christi from purchasing and operating ambulances in the use of a public ambulance system. The suit was brought under the authority of Article IX, Sec. 18 of the City Charter which allows any citizen who is a property taxpayer of the City to maintain an action to restrain the execution of any illegal or unauthorized or fraudulent agreement or contract on the part of the City. At the conclusion of all the evidence the trial court held for the City of Corpus Christi and denied plaintiff's application for permanent injunction.

The plaintiff has operated a privately owned ambulance service in the City since 1964. From the beginning of its operation through 1972 the Plaintiff had a contractual arrangement with the City by which the plaintiff would respond to emergency calls from the police department. Plaintiff was paid $5.00 by the City for each of these calls he responded to. Additionally, the plaintiff billed the individual who benefited from the service $25.00. The plaintiff responded to 2,530 of such emergency calls in 1972. In addition to the calls initiated by the police department, the plaintiff received calls for ambulance service from private individuals in the community. The plaintiff billed the individuals requiring the service at the same rate as those calls initiated by the police. The plaintiff made 850 such private calls in 1972.

In the latter part of 1972 the City Council for the City of Corpus Christi passed an ordinance allocating funds from the Federal Revenue Sharing Program for the purchase of 6 ambulances. Bids were invited for this purpose. A contract was proposed in which the City of Corpus Christi and the Nueces County Hospital District would organize and operate this

**326**

new ambulance service as a joint operation.

The plaintiff attacks the proposed public ambulance service on the grounds that the City Charter in Article IX, Sec. 15 requires a majority vote of the property taxpayers of the City in a special election to approve the purchase, construction or operation of ". . . a system or systems of water works, gas or electric lighting plants, telephones, streetcars and sewers, or any other public utility service or enterprise". The plaintiff claims that since no election was ever held, the City is operating a public utility service illegally, and as a result he will suffer irreparable damage therefrom.

The appellant attacks the ruling of the trial court in denying his application for injunctive relief on two grounds which form his points of error. They are:

*"First Point*

The trial court should have held that Henry Ayala, individually and d/b/a Custom Ambulance Service did suffer irreparable damage as a result of the institution by the City of Corpus Christi of a public emergency ambulance system.

*Second Point*

The trial court should have held that the City of Corpus Christi, Texas was required by its charter and particularly by the provisions of Article IX, Sec. 15(a), to hold a special election to allow the voters entitled to participate therein to approve the institution of the proposed public emergency ambulance system, or the purchase of ambulance therefor."

Before consideration is given to the points of error set forth by the plaintiff, it is interesting to note that the plaintiff did not claim a breach of contract by the City or an unjust determination of a franchise. The plaintiff does not challenge the power

of the City to purchase an ambulance system. Instead, plaintiff attacks the method which the City used to make this purchase as being illegal and in violation of the City Charter which controls such purchases and/or operations.

■ Appellant's contention that he would suffer irreparable harm by losing the emergency calls that he is presently getting from the police department is without merit. Plaintiff failed to meet the burden of proof necessary to show irreparable harm. The evidence showed that the plaintiff had a very low collection rate from calls from the police department. He admitted that the business he lost from the police department was of an inferior quality. He stated that he had a net profit of $1,500.00 for 1972. It was his testimony that his total business included a wrecker service, a wrecked storage service, and a personal call ambulance service in addition to those service calls from the police department.

■ Even if the plaintiff had met his factual burden, it would not be irreparable harm to him if the City had a legal right to institute the ambulance service, irrespective. There is a difference from showing an injury or loss alone and showing that the loss is related to a legally enforceable right or breach of a legal duty. State v. Brewer, 141 Tex. 1, 169 S.W.2d 468 (1943). An action will not lie for an injury resulting from the mere exercise of a legal right, or from the commission of a lawful action in a proper manner. The doctrine of damnum absque injuria (damage without injury) applies, and the loss is not cognizable in the law. Brown v. American Freehold Land Mortgage Company, 97 Tex. 599, 80 S.W. 985 (1904). See 1 Tex.Jur. Actions § 18. Where a non exclusive right or franchise is granted by a City, such City may grant the same right to another, without impairing a contract obligation. This would apply to the City

itself. In some cases, a City may also undertake to do that which the same right or franchise permits. See McQuillin, The Law of Municipal Corporations § 19.47 (3rd Ed. 1969). We hold that any loss that this appellant may have suffered because of the competition of this particular business in this City is not an injury which the law will attempt to prevent or remedy. Appellant's first point is overruled.

Article IX, Section 15(a) of the Charter of the City of Corpus Christi requires the approval of the majority of the property taxpayers voting in an election, where the City Council is to buy, construct, or maintain and operate a system or systems of water works, gas or electrical lighting plants, telephone, streetcars and sewers or any other public utility service or enterprise.

The main question before us is whether an ambulance service business is that type of public utility or enterprise envisioned by this Charter language so as to require voter approval for its acquisition and operation. Since it is not listed specifically, we must determine whether or not the general term "other public utility service or enterprise" would bring it within the terms of the Charter provisions.

Although public utility is often used in a broad sense, it is nevertheless limited and restricted here by the particular designations of the named type of utilities listed in the Charter. The latter general words, "other public utility service or enterprise", is necessarily limited to other like utilities which are set out specifically. The rule of ejusdem generis requires this result. Ejusdem generis means literally "of the same kind". The rule is designed to aid in the interpretation of general words which follow specific words and are construed to embrace objects similar in nature. The general words "other public utility service or enterprise" are not to be construed in their broadest sense but are held

to apply to things of the same kind or class as specifically mentioned. (i. e., water works, gas, electric, telephone, etc.). See Associated Indemnity Corp. v. Bur-Tex Constructors, Inc., 444 S.W.2d 338 (Tex. Civ.App.—Corpus Christi, 1969, n.r.e.) and authority cited therein. See also Farmers' & Mechanics' National Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120 (1911); Stevenson v. Record Publishing Co., 107 S.W.2d 462 (Tex.Civ.App.—Eastland 1937 writ dism'd); Huckabee v. Hansen, 422 S.W.2d 606 (Tex.Civ.App.—Corpus Christi 1967); 28 C.J.S. p. 1049.

The ambulance service company belonging to the plaintiff is a small proprietorship when compared to public utilities generally. Even though plaintiff's business serves the public, it is not the type of business that would qualify as a public utility in the narrow sense enumerated by the City Charter. The businesses or enterprises enumerated in the City Charter, are the corporate type businesses that are usually subjected to public offering or multiple ownerships, if they are not municipally owned. The plaintiff's ambulance service business is not such a business.

The Supreme Court of Texas in Carney v. Southwestern Motor Transport, 153 Tex. 267, 267 S.W.2d 802 (1954) held that an inter-city motor freight carrier, operating on a certificate of public convenience and necessity, and regulated by the Texas Railroad Commission, although affected with a public interest, did not qualify as a public utility. There is authority for deference to legislative definition of a public utility. In Article 6674u–1, Sec. 1(5), Vernon's Ann.Tex.Civ.St. concerning Warning Devices on Public Streets and Highways, the Legislature defined public utility as ". . . all telegraph, telephone, water, gas, light and sewage companies or cooperatives, or their contractors, and any other business presently or hereinafter recognized by the Legislature as a public utility." Our search does not reveal where the

Legislature has in any other place, defined a public utility to include a public ambulance service or like business.

The institution of an emergency ambulance service is, we believe, a service kindred to the police or fire service. This type of service is incident to the police power of the state: i. e. to protect the health, safety, and general welfare of its citizens. See Attorney General's opinions #M–231 (1968); #M–385 (1969); #C–772 (1966); #M–806 (1971). It does not require a capital investment such as would a water works system, electric or gas utility. We believe that the purchase and operation of the ambulance service was made in the furtherance of the public health, safety and welfare of the citizens of Corpus Christi and was properly initiated by ordinance as provided in Article IX, Sec. 2 and 3 of the City Charter which reads in part as follows:

> "The enumeration of particular powers in this charter shall not be deemed exclusive, but in addition to the powers enumerated the city shall have power to do all things necessary to efficient management and control of the municipal property and to promote the general welfare, not forbidden by this charter, the general laws or the Constitution of the State of Texas. . . .
>
> \*    \*    \*    \*    \*    \*
>
> The city council shall have power to enact and enforce all ordinances necessary to protect health, life and property, . . . to enact and enforce all ordinances necessary to the exercise of its corporate powers and duties."

We hold that an ambulance service purchased and operated by the City of Corpus Christi is not, as such, a public utility within the meaning of Article IX, Sec. 15 of the Charter.

Appellant's second point is overruled. The judgment of the trial court is affirmed.

Affirmed.